UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

DANIEL GUMA, MICHAEL D'ANTONI,
KEVIN HORN and TIMOTHY LYONS,
on behalf of themselves and others similarly situated,

                        Plaintiffs,                     Civil Action No.:

        - against -                   **CLASS ACTION**
                                            **<u>COMPLAINT</u>**

THE CITY OF LONG BEACH, ALL COUNTY
HOOK UP TOWING, INC. d/b/a ALL COUNTY
TOWING & RECOVERY, JOSEPH CALVAGNO,
Individually,

                                            **Jury Trial Demanded**

                        Defendants.
---------------------------------------------------------------------X

       Plaintiffs bring this Complaint on behalf of themselves and similarly situated vehicle owners, which cumulatively total approximately two hundred sixty-seven (267) individuals, against defendants the City of Long Beach ("Long Beach"), All County Hook Up Towing, Inc. ("All County") and Joseph Calvagno ("Calvano"), (collectively, "Defendants"), and by and through their attorneys CAMPANELLI & ASSOCIATES, P.C. allege as follows:

<u>**INTRODUCTION**</u>

       1.     The plaintiffs bring this case both on behalf of themselves and as a Class Action, seeking a declaratory judgment, injunctive relief, compensatory damages, costs and attorneys fees, pursuant to 42 U.S.C. §§1983 and §1988, for deprivation of plaintiffs' rights, and the rights of those similarly situated, which are secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the New York State Constitution.

2.      The plaintiffs challenge Long Beach's "Boot and Tow" policy and program, which consists of seizing and selling motor vehicles for the sole purpose of collecting monies for unpaid and often unadjudicated parking tickets, pursuant to Long Beach City Code (LBCC) Section 1, Chapter 15, Article VI, Division 2 (a copy of which is annexed hereto and made part of this Complaint as Exhibit "A").

3.      Under this City Code provision, the City seizes all motor vehicles belonging to any person with four (4) or more outstanding parking tickets, including those cases where the parking tickets are not yet past due and/or have not yet been adjudicated.

4.      To do so, the City employs license plate-reading vehicles to search for vehicles belonging to owners who have four (4) or more outstanding parking tickets.

5.      When they find *any* vehicle owned by a person with four (4) or more outstanding parking tickets, the City seizes the vehicle by putting a mechanical boot on it, thereby "immobilizing" the vehicle. *See* Exhibit "A," LBCC Sec. 15-209(a) and 15-210(a)(5).

6.      To secure the release of their vehicle, the owner must then immediately pay all sums claimed to be due on the outstanding parking tickets, even if such tickets have not yet been adjudicated, plus a $250 "immobilization fee" (for which the City *actually* charged as much as $500-$600) *See* LBCC Sec. 15-212(c)(1) plus an additional charge of $25 per day until the owner of the vehicle physically delivers the booting device back to the City. LBCC Sec 15-212(c)(2).

7.      If the vehicle owner does not pay all of such sums within 72 hours of immobilization by the City, their vehicle is towed, and they then cannot obtain its release unless they <u>additionally</u> pay a $120 "administrative fee" LBCC Sec 15-212(b), plus a $200 towing fee. LCC Sec. 15-212(b)(1), plus a $25 *per day* fee for storage. LBCC Sec. 15-212(b)(2), the latter two of which must be paid to All County and Calvagno, which impose *ex parte* liens against such vehicles to secure payment of same.

8.      If the vehicle owner does not pay all these sums within thirty (30) days from the day the City initially boots their vehicle, the City sells their vehicle and retains the proceeds to satisfy such amounts LBCC Sec. 15-213.

9.      Long Beach's boot and tow policy requires no warrant or Court order before seizing vehicles. Nor is there any provision for a hearing at which an owner can challenge: (a) the initial seizure of the vehicle, (b) the City's continuing retention of their vehicle, (c) the defendants' impressment of *ex parte* post-seizure liens on their vehicle, or even (d) the sale of their vehicle.

10.      Prior to selling such vehicles, both Long Beach, All County, and Calvagno unlawfully impress *ex parte* liens on the vehicles for the "immobilization fees," "administrative fees," and towing and storage charges which, they claim, *supersede* each owner's ownership interests in their vehicles.

11.      Since the City first enacted this policy on August 17, 2021 (*See* Exhibit "A") and as it remains codified within the current City code (*See* Exhibit "B"), the City of Long Beach has seized a total of approximately two hundred seventy (270) motor vehicles, solely because the owners of such vehicles had four (4) or more outstanding parking tickets.

3

12.     The owners of such seized vehicles, including the plaintiffs herein, are explicitly identified by name on the list annexed as Exhibit "C" hereto.

13.     Upon information and belief, not one of such owners was afforded any pre-seizure or post-seizure hearing in connection with the City's warrantless seizure, continued retention, and/or sale of their respective vehicles.

14.     Long Beach, All County, and Calvagno's actions deprived all of the individually-named plaintiffs and all of the vehicle owners named on the list annexed hereto as Exhibit "C" of their rights to due process as secured by the Fourteenth Amendment, their rights to be free from unreasonable seizures secured by the Fourth Amendment to the United States Constitution, as well as their rights to be free from unreasonable seizures secured by Article I, Section 12 of the New York State Constitution, and their rights to Due Process as secured by Article I, Section 6 of the New York State Constitution.

15.     Long Beach, All County, and Calvagno contemporaneously deprived the plaintiffs and the other seized vehicle owners of their constitutional rights by impressing liens on their vehicles without notice and a hearing, contrary to the Federal and New York State Constitutions.

16.     Each of the four (4) individually-named plaintiffs herein had one or more vehicles seized by the defendants between October 2022 and December 2022.

17.     All of the proposed Class Members had their respective vehicles seized by the defendants between August 17, 2021, and early 2023.

## JURISDICTION AND VENUE

18.    Plaintiffs bring this civil rights action pursuant to 42 U.S.C. §1983 and §1988 for deprivation of Plaintiffs' rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

19.    Jurisdiction is conferred on this Court by 28 U.S.C. §§1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in the Court for all suits brought pursuant to 42 U.S.C. §1983.

20.    Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because the causes of action arise under the Constitution and laws of the United States.

21.    The District Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367 for inter-related state law claims arising from the occurrences giving rise to the Federal claims and which have a common nucleus of operative fact.

22.    Venue lies in the Court pursuant to 28 U.S.C. §1391.

## PARTIES

23.    Plaintiff Daniel Guma is an individual who, at all relevant times described herein, resided in and continues to reside in Long Beach, New York, within the County of Nassau.

24.    Plaintiff Michael D-Antoni is an individual who, at all relevant times described herein, resided in and continues to reside in Long Beach, New York, within the County of Nassau.

25.    Plaintiff Kevin Horn is an individual who, at all relevant times described herein, resided in and continues to reside in Long Beach, New York, within the County of Nassau.

26.     Plaintiff Timothy Lyons is an individual who, at all relevant times described herein, resided in and continues to reside in Long Beach, New York, within the County of Nassau.

27.     The Defendant City of Long Beach, hereinafter referred to as the "City" and/or "Long Beach," is a municipal corporation organized under the laws of the State of New York, with a principal place of business situated at 1 West Chester Street, in Long Beach, County of Nassau, State of New York 11561.

28.     Upon information and belief, All County Hook Up Towing, Inc. is a closely-held domestic corporation organized on or about September 18, 2002, and existing under the laws of the State of New York, with a principal place of business situated at 212 California Place, Island Park, NY 11558.

29.     Upon information and belief, on or about September 27, 2005, defendant All County Hook Up Towing, Inc. began operating under the assumed name of "All County Towing & Recovery" and operating as a business under such assumed name and engaged in the business of towing and storage of motor vehicles, with a principal place of business operations located at 66 E. Merrick Road, Freeport, NY 11520.

30.     Upon information and belief, Defendant Joseph Calvagno is an individual residing in the State of New York, is the President and owner of Defendant All County Hook Up Towing Inc., and is the person responsible for setting policies and practices of All County.

31.     Defendants All County Hook Up Towing, Inc and its principal, Defendant Joseph Calvagno, are hereinafter collectively referred to below as "All County."

<u>**FACTS COMMON TO ALL COUNTS**</u>

32.    On or about August 17, 2021, the defendant City of Long Beach adopted Long Beach City Code of Ordinances (LBCC) Section 1, Chapter 15, Article VI, Division 2 (a copy of which is annexed hereto and made part of this Complaint as Exhibit "A").

33.    In enacting that local ordinance, the City authorized itself to make warrantless seizures of motor vehicles that were owned by, or registered to, any person who had four or more parking tickets that had been issued by the City, irrespective of whether or not such parking tickets had been adjudicated.

34.    Consistent with same, during the period between August 17, 2021, and early 2023, the City, through its agents, including All County, made warrantless seizures of two hundred seventy (270) motor vehicles that are listed, by registered owner and/or license plate, on the list annexed to this Complaint as Exhibit "C."

35.    Upon information and belief, at or about such time, the City entered a contractual agreement wherein the City appointed All County as its agent to seize and tow vehicles for the City, and to deprive the owners of such vehicles from their possession of same, unless and until such owners paid sums of money demanded by the City.

36.    The Defendant City of Long Beach seized such vehicles through Long Beach officials acting within their duties as law enforcement officers and through the City's authorized agents, which included Defendant All County.

37.    During the period described herein, All County was an active regular contract agent towing and detaining vehicles at the direction of Long Beach law enforcement officials.

38.    Upon the seizures of such vehicles, Defendant City of Long Beach directed All County to tow and detain the vehicles and withhold them on a continuing basis unless and until their respective owners paid all sums demanded to be paid by both the City and All County.

## Long Beach and All County Impressed *Ex Parte* Liens

39.    Upon information and belief, both Long Beach and All County demanded payment of various sums of money as a condition for releasing the seized vehicles and retained the seized vehicles to enforce payment of such sums.

40.    Upon information and belief, both the City and All County threatened seized vehicle owners that if they did not pay all sums claimed to be due to both the City and All County within thirty (30) days of their having seized the vehicle, they would sell the vehicles and use the proceeds of the sales to satisfy such sums claimed to be due and owing to the defendants.

41.    Long Beach and All Countys' demands for money in exchange for possession of seized was tantamount to asserting *de facto* possessory liens upon the seized vehicles, superior to each owner's priority ownership rights, the assertion, and impression of which constituted a deprivation without due process of law.

**Long Beach and All County Refused To Return Seized Vehicles**

42.     Upon information and belief, Long Beach and All County worked in concert to detain the seized vehicles by imposing a series of conditions for release.

43.     Long Beach would not permit vehicle owners to recover their seized vehicles unless they paid all tickets and sums that Long Beach claimed were allegedly due and all fees and charges for which All County demanded additional payment.

44.     Upon information and belief, Long Beach threatened to "auction" each owner's vehicle and/or that their vehicle would be "disposed of" unless they complied with Long Beach's and All County's demands.

45.     All County would not permit owners to recover their seized vehicles unless the owners first obtained permission from Long Beach to recover their vehicles.

46.     There is no lawful basis to require vehicle owners to comply with the demands made by Long Beach and All County as a condition of releasing their vehicles that had been seized without warrants.

47.     Long Beach and All County's initial towing and detention of the seized vehicles constituted a meaningful interference with the vehicle owner's possessory and property interests in the seized vehicles, which seizures were not effectuated pursuant to any warrants or any valid exceptions to the warrant requirement.

48.     Long Beach and All County continued to meaningfully interfere with each respective owner's possessory and property interests in their seized vehicles without warrants or valid exceptions to the warrant requirement.

49.     Both the initial seizure and the continued detention separately constituted unreasonable seizures of the seized vehicles in violation of the United States and New York Constitutions.

**All County's Involvement**

50.     All County seized, towed, and possessed the seized vehicles solely by virtue of its furtherance of Long Beach's "Boot and Tow" policy. All County detained the seized vehicles as a joint participant with Long Beach and therefore acted under color of law when it seized and detained the seized vehicles.

**Long Beach and All County Refuse to<br>Institute a Procedure for Judicial Review**

51.     Long Beach and All County did not take action to secure judicial review of the seizure before and after seizing such vehicles.

52.     Both before and after seizing such vehicles, Long Beach and All County did not take action to secure judicial review over the continued retention of the seized vehicles.

53.     Both before and after seizing such vehicles, Long Beach and All County did not pursue judicial disposition within a reasonable amount of time.

54.     Prior to impressing a lien for charges against the seized vehicles, Long Beach and All County had not provided any hearings before an impartial decisionmaker, with adequate notice, whereat the owners of such vehicles could protect their interests in recovering their vehicles and avoiding storage charges accruing *in futuram, or worse,* the defendants selling such vehicles as they routinely threatened.

55.     Any notice provided by Long Beach and/or All County was constitutionally inadequate for due process purposes.

## INDIVIDUAL PLAINTIFF ALLEGATIONS

56.    Each of the individually-named plaintiffs named herein had motor vehicles seized by the defendants in the manner described herein above.

57.    Prior to the seizures of their respective vehicles, each of the plaintiffs' vehicles was lawfully parked within the City of Long Beach.

58.    The defendants made warrantless seizures of each of the individually-named plaintiffs' vehicles, asserted *ex parte* liens upon each of them, and refused to release them to each of the respective plaintiffs unless and until they paid sums of money to both the City of Long Beach and All County.

59.    Upon information and belief, the City and All County threatened to sell the plaintiffs' vehicles if they did not pay both the City and All County the amounts demanded within thirty (30) days of the defendants having seized each respective vehicle.

### Plaintiff Daniel Guma

60.    At all relevant times described herein, Plaintiff Daniel Guma was the owner of a 2014 Mercedes Benz S550, which, on or about October 7, 2022, was lawfully parked within the City of Long Beach.

61.    On or about October 7, 2022, Mr. Guma began to drive his vehicle away from the front of his home, and a female City of Long Beach Parking Enforcement Officer "jumped in front of his vehicle" and stated, "You're not driving that car anywhere."  At that time and place, the defendants seized Mr. Guma's vehicle without a warrant by physically placing a boot on the Plaintiff's vehicle.

62.    The defendants then refused to release Mr. Guma's vehicle unless and until he paid monies to both the City and All County, and the defendants threatened to sell his vehicle

unless he paid such sums within thirty (30) days of the defendants having seized it.

63.     To secure the release of his vehicle, the defendants demanded that Mr. Guma immediately pay all sums claimed to be due to the City and/or All County, even though all of the tickets for which his car had been booted had been dismissed outright by the City of Long Beach Court.

64.     In making such demands to pay, the defendants afforded Mr. Guma no pre-seizure or post-seizure hearing before an impartial decisionmaker, with adequate notice, whereat Mr. Guma could protect his interests in recovering his vehicle and avoiding storage charges accruing *in futuram*, or worse, the defendants selling his vehicle, as is their policy, practice, and procedure.

65.     Plaintiff Daniel Guma sustained damages as a result of the foregoing, including, but not limited to, the sums he was extorted into paying to both the City and All County, the loss of both the use and possession of his motor vehicle and the loss of time at work, all as a direct result of his car having been seized by the defendants.

**Plaintiff Michael D'Antoni**

66.     At all relevant times described herein, Plaintiff Michael D'Antoni was the owner of two motor vehicles that were lawfully parked within the City of Long Beach and which were seized by the defendants, without warrants, on or about October 24, 2022.

67.     Plaintiff D'Antoni's seized vehicles are listed on Exhibit "C" as those vehicles bearing New York license plate numbers JRU4560 and 91479NC. They included but were not limited to a 2014 Mustang, which Mr. D'Antoni owned.

68.     The defendants refused to release Mr. D'Antoni's vehicles unless and until he paid monies to both the City and All County, and the defendants threatened to sell his vehicles

unless he paid such sums within thirty (30) days of the defendants having seized them.

69.     To secure the release of his vehicles, the defendants demanded that Mr. D'Antoni immediately pay all sums claimed to be due for outstanding parking tickets, even if such tickets had not yet been adjudicated, plus various fees which included but were not limited to, an "immobilization fee" of between $250 and $600, among other charges.

70.     In making such demands under threat that they would sell his cars if he failed to pay, the defendants afforded Mr. D'Antoni no pre-seizure or post-seizure hearing before an impartial decisionmaker, with adequate notice, whereat Mr. D'Antoni could protect his interests in recovering his vehicles and avoiding storage charges accruing *in futuram*, or worse, the defendants selling his vehicles, as they had threatened.

71.     Plaintiff Michael D'Antoni sustained damages as a result of the foregoing, including, but not limited to, the sums he was extorted into paying to both the City and All County, the loss of both the use and possession of his motor vehicles, and the loss of more than several days at work, all as a direct result of his cars having been seized by the defendants.

**Plaintiff Kevin Horn**

72.     At all relevant times described herein, Plaintiff Kevin Horn was the owner of a 2022 Kia Soul, which, on or about December 28, 2022, was lawfully parked within the City of Long Beach.

73.     On or about December 28, 2022, the defendants seized Mr. Horn's vehicle without a warrant.

74.     Immediately prior to the defendants' seizure of the Plaintiff's vehicle, the vehicle was parked in front of Mr. Horn's home.

75.    The defendants went to Mr. Horn's home to seize his vehicle because several months earlier, he had an insurance lapse for a period of four (4) days. Yet, as of the day the defendants came to seize his vehicle, the vehicle was both properly registered and properly insured.

76.    The Plaintiff asked if he could put his vehicle in his driveway, but the defendants refused to permit him to do so and instead seized his vehicle and towed it away.

75.    The defendants then refused to release Mr. Horn's vehicle unless and until he paid monies to both the City and All County, and the defendants threatened to sell his vehicle unless he paid such sums within thirty (30) days of the defendants having seized it.

77.    To secure the release of his vehicle, the defendants demanded that Mr. Horn immediately pay all sums claimed to be due for outstanding parking tickets, even if such tickets had not yet been adjudicated, plus various fees which included, but were not limited to, an "immobilization fee," of between $250 and $600, a $120 "administrative fee," a $200 towing fee, plus storage charges, among other charges which totaled not less than one thousand ($1,000.00) dollars.

78.    In making such demands under threat that they would sell his car if he failed to pay, the defendants afforded Mr. Horn no pre-seizure or post-seizure hearing before an impartial decisionmaker, with adequate notice, whereat Mr. Horn could protect his interests in recovering his vehicle and avoiding storage charges accruing *in futuram*, or worse, the defendants selling his vehicle, as they had threatened.

79.     Plaintiff Kevin Horn sustained damages as a result of the foregoing, including, but not limited to, the sums he was extorted into paying to both the City and All County, the loss of both the use and possession of his motor vehicle and the loss of time at work, all as a direct result of his car having been seized by the defendants.

**Plaintiff Timothy Lyons**

80.     At all relevant times described herein, Plaintiff Timothy Lyons was the owner of a 2018 Jeep Grand Cherokee, which, on or about December 16, 2022, was lawfully parked within the City of Long Beach.

81.     On or about December 16, 2022, the defendants seized Mr. Lyons' vehicle without a warrant.

82.     The defendants then refused to release Mr. Lyons' vehicle unless and until he paid monies to both the City and All County, and the defendants threatened to sell his vehicle unless he paid such sums within thirty (30) days of the defendants having seized it.

83.     To secure the release of his vehicle, the defendants demanded that Mr. Lyons immediately pay all sums claimed to be due for outstanding parking tickets, even if such tickets had not yet been adjudicated, plus various fees which included, but were not limited to, an "immobilization fee" between $250 and $600, a $120 "administrative fee," a $200 towing fee, plus storage charges, among other charges.

84.     In making such demands under threat that they would sell his car if he failed to pay, the defendants afforded Mr. Lyons no pre-seizure or post-seizure hearing before an impartial decisionmaker, with adequate notice, whereat Mr. Lyons could protect his interests in recovering his vehicle and avoiding storage charges accruing *in futuram*, or worse, the

defendants selling his vehicle, as they had threatened.

85.     Plaintiff Timothy Lyons sustained damages as a result of the foregoing, including, but not limited to, the sums he was extorted into paying to both the City and All County, the loss of both the use and possession of his motor vehicle and the loss of time at work, all as a direct result of his car having been seized by the defendants.

## CLASS ALLEGATIONS

86.     The named Plaintiffs bring this action on their behalf and for those similarly situated. As detailed in this Complaint, Defendants regularly and routinely seize and attach liens to vehicles under Long Beach's "Boot and Tow" policy which is unconstitutional.

87.     The Defendants implemented this "Boot and Tow" activity over the entire geographic area of The City of Long Beach, impacting hundreds of vehicles in which class members were deprived of their property rights, to both the use and possession of their vehicles, with no notice, no due process, and no compensation.

88.     Accordingly, this action is ideally situated for class-wide resolution, including injunction and/or declaratory relief.

89.     The Class is defined as all 267 vehicle owners whose vehicles were seized under Long Beach's Boot and Tow Policy, whose names and/or license plates are explicitly set forth within the list made part of this Complaint as Exhibit "C" annexed hereto.

90.     The Class is properly brought and should be maintained as a class action under Federal Rule 23 (b), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

91.     **Numerosity**:  Class Members are so numerous that the actual joinder of all 267 members is impracticable.

92.    **Commonality**: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.    Whether Defendants are responsible for violation of constitutional rights via Long Beach's "Boot and Tow" policy;

    b.    Whether Plaintiffs and the other class members are entitled to damages and injunctive relief;

    c.    Whether Plaintiffs and the Class are entitled to monetary damages under the causes of action delineated below.

93.    **Typicality**: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same injury when Defendants seized vehicles under the "Boot and Tow" policy. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

94.    **Adequacy**: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent; their 42 U.S.C. §1983 claims are common to all members of the Class, and they have a strong interest in vindicating their rights; they have retained counsel competent and experienced in Section 1983 claims based upon deprivation of rights in seized vehicles and class action litigation, and they intend to prosecute this action vigorously. Plaintiff has no interests which conflict with those of the Class. Plaintiff and its counsel will fairly and adequately protect the Class Members' interests.

95.    Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying

adjudications.

96.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy.

97.     Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' concerted action in enforcing Long Beach's "Boot and Tow" policy.

98.     **Superiority**: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

d.     The joinder of numerous individual Class Members with hundreds of claims is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; the individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions;

e.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

f.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

g.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

h.     This class action will assure uniformity of decisions among Class Members;

i.     The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

j.     Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by single class action; and

k.    It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were deprived of their rights by Long Beach's enforcement of its "Boot and Tow" policy.

99.    Accordingly, this Class is properly brought and should be maintained as a class action under Fed. Rule Civ. Pro. 23 (b) because questions of law or fact common to Class Members predominate over any questions affecting only individual members and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**INJUNCTIVE AND DECLARATORY CLASS RELIEF**

100.    Fed. Rule Civ. Pro. 23 (b) contemplate a class action for purposes of seeking class-wide injunctive and declaratory relief.

101.    Here, Defendants have engaged in conduct that deprives persons of their civil rights by destroying personal property with no constitutional safeguards whatsoever. Since Long Beach's "Boot and Tow" program has been uniformly directed at all such vehicles within Long Beach, New York, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.

102.    The injunctive and declaratory relief Class is properly brought and should be maintained as a class action, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

103.    The injunctive and declaratory relief claim class is properly brought and should be maintained as a class action because Plaintiffs seek injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification is appropriate because Defendants have acted or refused to act in a manner that generally applies to the injunctive Class (i.e., Defendants continue to enforce the unconstitutional aspects of Long Beach's "Boot and Tow" policy and program).

104.    Any final injunctive relief or declaratory relief would benefit the entire Injunctive Class as Defendants would be prevented from continuing its unconstitutional and deprivational seizure and destruction of vehicles.

**COUNT I**

**Violation of Civil Rights Pursuant to title 42
U.S.C. §1983 (Deprivation of Property by
Unreasonable Seizure)**

**On behalf of The Individually-Named Plaintiffs**

105.    The Plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in paragraphs "1" through "104" hereinabove, with the same force and effect as if fully set forth at length herein.

106.    Each of the individually-named plaintiffs is the holder of protectable property interests in their use, possession, and ownership of their motor vehicles, which the defendants seized without warrants.

107.    Each of the plaintiffs had their motor vehicles seized by the defendants during the period between August 17, 2021, and early 2023.

108.    The names and/or license plate numbers for their respective seized motor vehicles are listed on Exhibit "C" which is made a part hereof.

109.    The Defendants meaningfully interfered with the plaintiffs' protectable interests in their motor vehicles by booting them, towing them, detaining them, subjecting them to liens, and threatening to sell them to enforce such liens.

110.    By these actions, the defendants acted under color of law to seize the plaintiffs' vehicles within the meaning of the Fourth Amendment to the United States Constitution.

111.    Defendants' seizure of the plaintiffs' vehicles was unaccompanied by a warrant.

112.    Defendants' seizure of the plaintiffs' vehicles was unaccompanied by any legitimate exception to the warrant requirement.

113.    Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the detention of the seized vehicles and encumbering of the seized vehicles with a lien exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

114.    Defendants' seizure of the plaintiffs' vehicles was, therefore, unreasonable and in violation of the Fourth Amendment to the United States Constitution.

115.    Defendants' unreasonable seizure of the seized vehicles was accomplished in accordance with the Defendants' standard policy and/or custom under Long Beach's "Boot and Tow" policy and program.

116.    As a direct and proximate result of the defendants' violation of the plaintiffs' Constitutional right to be free from unreasonable seizures, the plaintiffs have suffered damages, including, but not limited to, the lost value of their use and possession of the seized vehicles.

117.    Therefore, the plaintiffs are entitled to relief under 42 U.S.C. §1983 and 42 U.S.C. §1988.

## COUNT II

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Deprivation of Property by Unreasonable Seizure)**

### On Behalf of the Class

118.    The Plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in paragraphs "1" through "117" hereinabove, with the same force and effect as if fully set forth at length herein.

119.    All class members are the holders of protectable property interest in their use, possession, and ownership of their motor vehicles, which the defendants seized without warrants.

120.    All class members had their motor vehicles seized by the defendants during the period between August 17, 2021, and early 2023.

121.    The names and/or license plate numbers for their respective seized motor vehicles are listed on Exhibit "C' which is made a part hereof.

122.    The defendants meaningfully interfered with all class members' protectable interest in their motor vehicles by booting them, towing them, detaining them, subjecting them to liens, and threatening to sell them to enforce such liens.

123.     By these actions, defendants acted under color of law to seize the seized vehicles within the meaning of the Fourth Amendment to the United States Constitution.

124.     Defendants' seizure of the class members' vehicles was unaccompanied by a warrant.

125.     Defendants' seizure of all class members' vehicles was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the detention of the seized vehicles and encumbering of the seized vehicles with a lien exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the vehicle was seized.

126.     Defendants' seizure of all class members' vehicles was, therefore, unreasonable and in violation of the Fourth Amendment to the United States Constitution.

127.     Defendants' unreasonable seizure of the class members' seized vehicles was accomplished in accordance with the defendants' standard policy and/or custom under Long Beach's "Boot and Tow" policy and program.

128.     As a direct and proximate result of defendant's violation of the class members' Constitutional right to be free from unreasonable seizures, the plaintiffs and all class members have suffered damages based upon the lost value of their use and possession of the seized vehicles and to the extent that the City proceeded to sell vehicles which were owned by class members, for the loss of their vehicles.

129.     Therefore, the class members identified in Exhibit "C" are entitled to relief under

42 U.S.C. §1983 and 42 U.S.C. §1988.

## COUNT III

**Violation of Civil Rights Pursuant to title 42
U.S.C. §1983 (Deprivation of Property Without
Due Process of Law)**

### On behalf of The Individually-Named Plaintiffs

130.    The plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in the paragraphs "1" through "129" hereinabove, with the same force and effect as if fully set forth at length herein.

131.    Each of the plaintiffs is the holder of a protectable property interest in their respective motor vehicles, which were seized by the defendants, and such property interests include the right to own, possess and use their respective motor vehicles.

132.    Defendants' actions deprived the plaintiffs of such protectable property interests in their seized vehicles.

133.    Defendants had no mechanism for, nor did they secure, any review of the defendants' actions in relation to the seized vehicles before a judge or any other neutral decisionmaker.

134.    Defendants did not provide the plaintiffs with any opportunity to be heard in relation to any of defendants' actions or in relation to the seized vehicles in any venue at any time.

135.    Because defendants provided no mechanism for review of any of defendants' actions in relation to the seized vehicles by a judge or other neutral decisionmaker, defendants failed to provide the plaintiffs with constitutionally adequate notice of that non-existent hearing

procedure.

136.    Defendants' deprivation of plaintiffs' rights in the seized vehicles was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

137.    Defendants' deprivations of plaintiffs' rights in the seized vehicles were accomplished in accordance with the Defendants' standard policy and/or custom under Long Beach's "Boot and Tow" policy and program.

138.    As a direct and proximate result of defendants' violation of plaintiffs' Constitutional right to be free from deprivations without due process of law, plaintiffs have suffered damages including, but not limited to, the lost value of the use and possession of their seized vehicles.

139.    Therefore, the plaintiffs are entitled to relief under 42 U.S.C. §1983 and 42 U.S.C. §1988.


## COUNT IV

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Deprivation of Property Without Due Process of Law)**

### On Behalf of the Class

200.    The plaintiffs reallege, reiterate, and incorporate herein by reference the allegations set forth in the paragraphs "1" through "119" hereinabove, with the same force and effect as if fully set forth at length herein.

201.    All class members are the holders of protectable property interests in their respective motor vehicles, which were seized by the defendants, and such property interests

include the rights to own, possess and use their respective motor vehicles.

202.    Defendants' actions deprived the class members of such protectable property interests in their seized vehicles.

203.    Defendants had no mechanism for, nor did they secure, review of any of defendant's actions in relation to the seized vehicles before a judge or other neutral decisionmaker.

204.    Defendants did not provide any class members with any opportunity to be heard in relation to any of defendants' actions or in relation to the seized vehicles in any venue at any time.

205.    Because defendants provided no mechanism for, nor did either secure, review of any of defendants' actions in relation to the seized vehicles by a judge or other neutral decisionmaker, defendants failed to provide the class members with constitutionally adequate notice of that non-existent hearing procedure.

206.    Defendants' deprivation of class members' rights in the seized vehicles was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

207.    Defendants' deprivations of plaintiffs' and class members' rights in the seized vehicles were accomplished in accordance with the Defendants' standard policy and/or custom under Long Beach's "Boot and Tow" policy and program.

208.    As a direct and proximate result of defendants' violation of class members' Constitutional right to be free from deprivations without due process of law, class members have suffered damages including, but not limited to, the lost value of the use and possession of their vehicles.

209.    Therefore, the class members identified in Exhibit "C" are entitled to relief under 42 U.S.C. §1983 and 42 U.S.C. §1988.

## COUNT V

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Taking of Property Without Just Compensation) (as against Long Beach)**

**On Behalf of Both the Individually-Named Plaintiffs and Class Members**

210**.**    The plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in the paragraphs "1" through "209" hereinabove, with the same force and effect as if fully set forth at length herein.

211.    The Plaintiffs, and all class members, are the holders of protectable property interests in their seized vehicles, which included their rights to own, use, and possess same.

212.    Long Beach compensated All County, in whole or in part, by turning over possession of the seized vehicles to All County, who lawfully possessed the seized vehicles only by virtue of having obtained them from Long Beach.

213.    All County accepted the seized vehicles as compensation, in whole or in part, for the services it provided to Long Beach, namely the towing and detention of the seized vehicles.

214.    Long Beach damaged vehicle owners' property interests in the seized vehicles and their possessory rights in same by turning over the seized vehicles to All County.

215.    Long Beach thereby took all class members' interests in the seized vehicles— their right to the value of the seized vehicles and the right to use and possession of same —for a

public use.

216.    Long Beach did not compensate the plaintiffs or class members for the taking of their interests in the seized vehicles.

217.    Long Beach, therefore, took the plaintiffs' and class members' property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

218.    Long Beach's taking of plaintiffs' and class members' rights in the seized vehicles was accomplished in accordance with Long Beach's standard policy and/or custom under Long Beach's "Boot and Tow" policy and program.

219.    As a direct and proximate result of Long Beach's violation of the plaintiffs' and class members' Constitutional right to be free from takings without just compensation, the plaintiffs and class members have suffered damages based upon the lost value of the seized vehicles, loss of use of the seized vehicles, and other damages.

220.    Therefore, the plaintiffs and class members are entitled to relief under 42 U.S.C §1983 and 42 U.S.C §1988.

## COUNT VI

### Violation of the New York Constitution

### On Behalf of Both the Individually-Named
### Plaintiffs and Class Members

221.    The plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in the paragraphs "1" through "220" hereinabove, with the same force and effect as if fully set forth at length herein.

222.    Long Beach and All County's actions also violate the corresponding protection

of the New York State Constitution as set forth above.

## COUNT VII

### Conversion
### (as Against The All County Defendants only)

### On Behalf of Both the Individually-Named
### <u>Plaintiffs and Class Members</u>

223**.**    The plaintiffs reallege, reiterate and incorporate herein by reference the allegations set forth in the paragraphs "1" through "222" hereinabove, with the same force and effect as if fully set forth at length herein.

224.    The plaintiffs and all class members owned the seized vehicles and were entitled to immediate possession of the seized vehicles in accordance with their respective rights.

225.    Both defendants, All County and Joseph Calvagno, have unlawfully interfered with the class members' right to possess the seized vehicles by refusing to release their seized vehicles to them unless the vehicle owners complied with the conditions.

226.    Upon information and belief, Defendant All County is a closely-held corporation owned by Defendant Joseph Calvagno, who owns and controls All County.

227.    By these actions, All County and Joseph Calvagno have purposefully, knowingly and/or intentionally exercised dominion and control over the plaintiffs' and class members' seized vehicles, wrongfully interfering with plaintiffs' and class members' rights to possession of the seized vehicles.

228.    The plaintiffs and class members have suffered damages as a result of defendants All County and Joseph Calvagno's actions, and concomitantly, they are entitled to an award of damages and a monetary judgment for same.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays for relief and requests that the Court renders

judgment as follows:

### COUNT I

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Deprivation of Property by Unreasonable Seizure)**

### On behalf of The Individually-Named Plaintiffs

(a)     A Declaratory Judgment Adjudging and Declaring the practices of the

defendants described herein as unconstitutional and granting injunctive relief to prohibit the

continuance of same;

(b)     Judgment against the defendants, jointly and severally, and in favor of the

individually-named plaintiffs, for actual damages, consequential damages, punitive damages (as

to the All County defendants only), statutory damages, fees, and costs of suit, including

reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)     Such other and further relief as the Court deems just and proper.

### COUNT II

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Deprivation of Property by Unreasonable Seizure)**

### On Behalf of the Class

(a)     A Declaratory Judgment Adjudging and Declaring the practices of the

defendants described herein as unconstitutional and granting injunctive relief to prohibit the

continuance of same;

(b)      Judgment against the defendants, jointly and severally, and in favor of each member of the Class for actual damages, consequential damages, punitive damages (as to the All County defendants only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)      Such other and further relief as the Court deems just and proper.

## COUNT III

**Violation of Civil Rights Pursuant to title 42 U.S.C. §1983 (Deprivation of Property Without Due Process of Law)**

**On behalf of The Individually-Named Plaintiffs**

(a)      A Declaratory Judgment Adjudging and Declaring the practices of the defendants described herein as unconstitutional and granting injunctive relief to prohibit the continuance of same;

(b)      Judgment against the defendants, jointly and severally, and in favor of the individually-named plaintiffs, for actual damages, consequential damages, punitive damages (as to the All County defendants only), statutory damages, fees, and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)      Such other and further relief as the Court deems just and proper.

## COUNT IV

**Violation of Civil Rights Pursuant to title 42
U.S.C. §1983 (Deprivation of Property Without
Due Process of Law)**

### On Behalf of the Class

(a)      A Declaratory Judgment Adjudging and Declaring the practices of the

defendants described herein as unconstitutional and granting injunctive relief to prohibit the

continuance of same;

(b)      Judgment against the defendants, jointly and severally, and in favor of each

member of the Class for actual damages, consequential damages, punitive damages (as to the

All County defendants only), statutory damages, fees and costs of suit, including reasonable

attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)      Such other and further relief as the Court deems just and proper.

## COUNT V

**Violation of Civil Rights Pursuant to title 42
U.S.C. §1983 (Taking of Property Without Just
Compensation) (as against Long Beach)**

**On Behalf of Both the Individually-Named
Plaintiffs and Class Members**

(a)      A Declaratory Judgment Adjudging and Declaring the practices of the

defendants described herein as unconstitutional and granting injunctive relief to prohibit the

continuance of same;

(b)      Judgment against the defendants, jointly and severally, and in favor of each of the individually named plaintiffs and all members of the Class for actual damages, consequential damages, punitive damages (as to the All County defendants only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)      Such other and further relief as the Court deems just and proper.

**COUNT VI**

**Violation of the New York Constitution**

**On Behalf of Both the Individually-Named
<u>Plaintiffs and Class Members</u>**

(a)      A Declaratory Judgment Adjudging and Declaring the practices of the defendants described herein as unconstitutional and granting injunctive relief to prohibit the continuance of same;

(b)      Judgment against the defendants, jointly and severally, and in favor of each of the individually named plaintiffs and all members of the Class for actual damages, consequential damages, punitive damages (as to the All County defendants only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)      Such other and further relief as the Court deems just and proper.

## COUNT VII

**Conversion**
**(as Against The All County Defendants only)**

**On Behalf of Both the Individually-Named**
**Plaintiffs and Class Members**

(a)    A Declaratory Judgment Adjudging and Declaring the practices of the defendants described herein as unconstitutional and granting injunctive relief to prohibit the continuance of same;

(b)    Judgment against the defendants All County Hook Up Towing Inc and Joseph Calvagno, jointly and severally, and in favor of each of the individually named plaintiffs and all members of the Class for actual damages, consequential damages, punitive damages (as to the All County defendants only), statutory damages, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

(c)    Such other and further relief as the Court deems just and proper.


Dated: Merrick, NY
      June 19, 2023

                        CAMPANELLI & ASSOCIATES, P.C.
                        Attorneys for Plaintiffs

                        By: /s/ Andrew J. Campanelli

                            Andrew J. Campanelli
                            1757 Merrick Ave, Suite 204
                            Merrick, NY 11566
                            516-746-1600
                            ajc@campanellipc.com